Matter of Lowe v State of N.Y. Div. of Hous. & Community Renewal (2004 NY Slip Op 50427(U))

[*1]

Matter of Lowe v State of N.Y. Div. of Hous. & Community Renewal

2004 NY Slip Op 50427(U)

Decided on May 19, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 19, 2004

Supreme Court, Queens County
Matter of Elisheva Lowe, Petitioner, - -
against
State of New York Division of Housing and Community Renewal et al., Respondents.
INDEX NO. 10837/03

Duane A. Hart, J.
In this Article 78 proceeding petitioner Elisheva Lowe seeks a judgment reversing the decision and order of respondent State of New York Division of Housing and Community Renewal (hereinafter "DHCR") and Paul A. Roldan, Deputy Commissioner for Rent Administration dated March 11, 2003 which determined the maximum collectible rent for the subject apartment to be $669.06 as of January 1, 2000, and awarding her attorney's fees, costs and disbursements pursuant to CPLR 8601(a).
 The within action was restored to the calendar pursuant to a so-ordered stipulation and an order of this court dated October 16, 2003.
 Petitioner Elisheva Lowe is the tenant of a rent- controlled apartment, D4D, located at 117-01 Park Lane South, Kew Gardens, New York. The apartment is owned by Dr. Simon Kappal who, pursuant to a letter dated February 25, 2002, requested that the DHCR correct a number of errors in the Report of Maximum Rent (hereinafter "rental history report") issued by the DHCR on January 10, 2001 under docket number LG 120042UT. The owner claimed that except for a reduction of the value of any remaining outstanding unrestored services, the collectible rent should be the current unfrozen Maximum Collectible Rent ("MCR"). Attached to the Report on Maximum Rent was a computer printout of the subject apartment's rental history from January 1, 1972 through January 1, 2001, along with a brief explanation for each rent adjustment. The owner asserted that an order had been issued which reduced the maximum rent by $40.00 a month, effective December 1, 1989 based upon a finding of diminution of services; that an order had been issued on October 29, 1993 which found that not all of the services had been restored and, thus, had partially restored the maximum rent in the amount of $37.90 a month; that this order provided that "[i]f a decrease in an essential service as indicated by a '*' remains, the owner may not collect any MBR or MCI increases granted subsequent to the order reducing rent nor any fuel cost adjustments" and also provided that "[i]f none of the remaining decreases are for essential services, the owner is entitled to these authorized rent increases"; that in calculating the maximum rent in the report the restoration of [*2]$37.90 had not been included in the amount of rent the owner was entitled to collect; that none of the remaining service reductions were found to be essential services and therefore the $37.90 a month should have been included, and that the failure to include this sum was in violation of DHCR's Policy Statement 90-1, which permits the collection of subsequent rent increases during the pendency of a rent reduction order based upon a diminution of services that are not considered a detriment to the health of the tenant. The owner also asserted that with regards to certain other rent reduction orders, these rents were also partially restored. The owner asserted that the Rent Administrator erroneously continued the rent freeze as if the apartment was rent-stabilized, rather than calculating the restored rent into the MCR. In response to this letter, the DHCR issued a Notice of Commencement of Administrative Proceeding to Determine the Maximum Rent on March 14, 2002.
 The tenant Elisheva Lowe filed a rent overcharge complaint with the DHCR on March 27, 2002, in which she asserted that the maximum collectible rent was $367.62 as set forth in the DHCR's rental history report and that she was being overcharged. The owner, in response, claimed that in 1998 the tenant's rent had been determined to be $605.52 by a rabbinical court, that the tenant's claim of an overcharge was moot as she was only paying $367.62, and that as the DHCR had re-opened the case to determine the maximum collectible rent, the agency had conceded that the amount stated in the report was incorrect.
 The Rent Administrator, in an order issued April 19, 2002, consolidated the tenant's overcharge complaint with the owner's application to determine the maximum rent. On August 9, 2002, the Rent Administrator issued an order in which he determined that the MCR was $354.62, effective July 1, 1995, without fuel cost adjustments. Attached to this order is a computer printout of the subject apartment's rental history from January 1, 1972 through January 1, 2000 (which showed that the apartment's July 1, 1995 maximum rent had been frozen through January 1, 2000), along with a brief explanation of each rent adjustment. The printout was divided into two categories  "MCR Amount" which showed the maximum rent the owner could collect for the subject apartment and "Comments" which showed among other things the "rent in effect," which was the maximum rent the owner would have been eligible to collect but for the bar on collecting rent increases granted after the issuance of a rent reduction order based upon a diminution of services, pursuant to Policy Statement 90-1.
The owner filed a petition for administrative review ("PAR") on September 11, 2002 in which he reiterated the arguments he made in the proceeding before the Rent Administrator. He also asserted that in the computer printout relied upon by the Rent Administrator it was noted that an order under docket number DC120577S had reduced the rent by $4.50 per month; that there were two separate rent restoration orders under docket numbers FE120051OR and GC120201OR which related to the order issued under docket number DC120577S and restored the rent by $2.50 a month and $2.00 a month; that the rent reduction of $4.50 a month had been fully restored; that the latter rent restoration order issued under docket number GC120201OR was incorrectly listed as a partial restoration and should have been listed as a full restoration; and that the rent restoration order issued under docket number DK110386S on April 22, 1991 did not find that there had been a diminution of essential services as defined by Policy Statement 90-1. The owner asserted that it was, therefore, improper for the Rent Administrator to have continued the rent freeze after the partial rent restoration order and that the [*3]maximum rent should be $669.06 a month. The tenant served a response on September 18, 2002 in which she asserted that the Rent Administrator's determination was correct and should be upheld.
 The Deputy Commissioner, in a order dated March 11, 2002, granted the owner's PAR in part and modified the Rent Administrator's order, finding that the MCR for the subject apartment was $669.06 per month, effective January 1, 2000. The Commissioner noted that Policy Statement 90-1 which was promulgated by the rent agency on February 8, 1990, provides in part, the following: "'Rent decrease orders for a failure to maintain services, currently in effect for rent controlled apartments, which do not distinguish between a failure to provide an essential or a non-essential service, bar the collectability of any subsequent MCI increase, until an order has been issued restoring the rent'." Thus, rent reductions for essential services thus barred the collection of MCR increases pending the restoration of the services, while rent reductions for non-essential services would not. The Deputy Commissioner noted that the MCR for the subject apartment had been frozen by the order issued under docket number CJ120149S, as this order was issued prior to the promulgation of Policy Statement 90-1, and did not distinguish between a failure to provide essential or non-essential services. The Deputy Commissioner examined the rent restoration order issued on October 29, 1993 (docket number GC12017OR) which partially restored the maximum rent for the apartment based upon a finding that some of the services noted in the rent reduction order had been restored. The Deputy Commissioner found that by the terms of this order, the bar to collecting rent increases based upon pending rent-restoration orders was lifted on November 1, 1993, the effective date of the order. The Deputy Commissioner also examined two additional restoration orders which partially restored the rent, and determined that the total amount of the rent restored was $4.50 a month, which constituted a full restoration of the amount reduced by the service reduction order issued under docket number DC120577S.
The Deputy Commissioner, upon a review of these orders, found that "the increases in the subject apartment's maximum rent between November 21, 1989 and November 1, 1993 were collectable as of November 1, 1993 (i.e. the landlord had the right to collect from the subject tenant $504.24 per month, effective November 1, 1993, which was the "Rent In Effect" noted in the computer printout for that date. That rental amount includes all maximum rent increases the landlord was entitled to collect up to November 1, 1993)." The Deputy Commissioner, therefore, found that "the subject apartment's maximum collectible rents, or the rents actually collectible (noted as "MCR Amount" in the "Rent Control Rent History Report" attached to the Rent Administrator's order of August 9, 2003), as well as the amounts described as "Rent in Effect" in the "Comments" column of that Report, from January 1, 1972 through October 31, 1993, are correct. However, the Commissioner further finds that for the period beginning November 1, 1993, the subject apartment's maximum collectible rents ("MCR Amounts" or the rents actually collectible), should be changed to be equal to those described as "Rents in Effect" in that Report attached to the Administrator's order. The Commissioner finds that, as noted in that Report, the "Rent in Effect" for the subject apartment is $669.06, effective January 1, 2000."
The Deputy Commissioner determined that the prior rent reduction of $4.50 per month had been fully restored pursuant to two restoration orders, and that the term "partial restoration" contained in the Rent History's Report's explanation referred to the fact that it took [*4]two rent restoration orders to accomplish the full restoration. The Deputy Commissioner found that the report issued under docket number LG120042UT was "for informational purposes only since it was issued in response to the subject tenant's request for a calculation of the subject apartment's maximum rent; that the proceeding was ex parte (no notice was required to be given to the landlord); and the subject apartment's maximum rent update issued under Docket No. LG120042UT was not an order, and, as such, was not binding on the rent agency in this or in any other proceeding." The Deputy Commissioner also found that prior to the issuance of that report the landlord should have known that the order issued under docket number GC120107OR permitted him to collect prospectively MBR increases granted on or after November 1, 1989, effective November 1, 1993. It was noted that the order issued under docket number GC1201070R had been affirmed on administrative review. The Deputy Commissioner, however, determined that if the landlord had collected from the subject tenant rents that were less than the "Rent in Effect" (which was the same as the MCR as of November 1, 1993 due to the removal of the rent freeze), the landlord was estopped from seeking to collect the full amount he could have collected based upon the principle of accord and satisfaction.
 The Deputy Commissioner further noted that the report issued on January 10, 2001 had improperly calculated the subject apartment's maximum rent without taking into account the fact that the rent freeze had been removed by the prior order, and that the landlord had collected from the subject tenant the maximum collectible rent noted in the computer printout attached to the report, which was less than the "Rent in Effect" because of that report's failure to remove the rent freeze on November 1, 1993. The Deputy Commissioner noted that as the landlord did not seek to challenge the veracity of the rent agency's report of January 10, 2001 until more than a year after its issuance, the landlord could not seek to collect the full "rent in effect" between February 1, 2001, the first rent payment date occurring after the issuance of the report and March 1, 2002, the first rent payment date occurring after the landlord requested a review of the agency's report. The Deputy Commissioner, thus, barred the landlord from collecting any arrears for the period before March 1, 2002, and permitted the tenant to pay any other arrears in one lump sum, or in equal monthly installments equal to the number of months between March 1, 2002 and the date of the March 11, 2003 order and opinion. Finally, it was noted that the order under review did not include orders which may have adjusted the MCR after January 1, 2000, and that it did not include fuel cost adjustments which the landlord may be entitled to collect.
Petitioner Elisheva Lowe now seeks a judgment vacating the DHCR's decision and order of March 11, 2003, and awarding her attorney's fees, costs and disbursements pursuant to CPLR 8601(a). It is asserted that the partial restoration of rent and the segregation of non-essential and essential services is a purely interpretative issue which was arbitrarily applied, as the Rent Administrator, despite noting that the original order of November 1998 did not distinguish between a failure to provide an essential or non-essential service, restored all of the reduced rent despite the fact that all services had not been restored. It is further asserted that the order of March 11, 2003 is arbitrary and capricious as it fails to account for conflicting orders and opinions issued by the DHCR since 1998. Petitioner also asserts that the agency's application of Policy Statement 90-1 here was prejudicial, that the agency's delay in applying this policy was inexcusable, and that the agency's failure to apply the as it existed at the time the [*5]application was filed was arbitrary and capricious. In addition, petitioner notes that prior to the DHCR's determination of the PAR, she attended a rabbinical court and was advised to pay, and in fact her father-in-law paid, the owner the sum of $7,737.94.
Respondent DHCR, in opposition, asserts that its decision and order of March 11, 2003 was neither arbitrary nor capricious and has a substantial basis in the law and the record and, therefore, should be upheld.
It is well settled that the court's power to review an administrative action is limited to whether the determination was warranted in the record, had a reasonable basis in law and was neither arbitrary nor capricious. (Colton v Berman, 21 NY2d 322; Matter of 36-08 Queens Realty v New York State Div. of Hous. and Community Renewal, 222 AD2d 440.) In the case at bar, the court finds that the Deputy Commissioner's decision and order of March 11, 2003 is supported by substantial evidence in the record, has a reasonable basis in law, and is neither arbitrary nor capricious.
 It is well within the DHCR's scope of authority to determine the lawful rent for rent-controlled housing accommodations. In the within proceeding, the Deputy Commissioner found, pursuant to the terms of the order issued under docket number GC120107OR, that the existence of outstanding non-essential service conditions did not bar the owner from collecting approved MCR rent increases. Section 2202.16(a) of the New York City Rent and Eviction Regulations provide that: "[t[he administrator may order a decrease of the maximum rent otherwise allowable *** where there has been a substantial deterioration of the housing accommodations because of the failure of the landlord to properly maintain the same, or there has been a decrease in the dwelling space, essential services, furniture, furnishings or equipment required under section 2201.2 of this Title. *** The maximum rent for the housing accommodation shall be decreased by that amount which the administrator finds to be the reduction in the rental value of the housing accommodation because of the substantial deterioration or decrease in dwelling space, essential services, furniture, furnishings or equipment. The administrator may, however, take into consideration all factors bearing on the equities involved." (9 NYCRR 2202.16) The regulations further provide that: "No new maximum rent shall be established pursuant to section 2201.4 of this title, and no adjustment shall be made pursuant to subdivision(a) of section 2201.5, unless the landlord has certified that he is maintaining all essential services required to be maintained with respect to the housing accommodations covered by such certification, and that he will continue to maintain such services so long as the new maximum rent or the adjustment is in effect. For purposes of this paragraph, essential services shall be defined as: heat during that part of the year when required by law, hot water, cold water, superintendent services, maintenance of front or entrance door security (including but not limited to lock and buzzer), garbage collection, elevator service, gas, electricity and other utility services to both public and required private areas, and such other services wherein failure to provide and/or maintain such would constitute a danger to the life or safety of, or would be detrimental to the health of, the tenant or tenants***." (9 NYCRR 2202.3[2].)
 The DHCR promulgated Policy Statement 90-1 on February 8, 1989, in order to "clarify the effect of a rent reduction order for the failure to maintain services on MBR increases." The Policy Statement provides that: "a rent reduction order for the failure to [*6]maintain an essential service *** [as defined 9 NYCRR 2202.3 (2)] will bar the collectability of any subsequent increase in the MCR after the effective date of the rent reduction order until a rent restoration order has been issued. However, if the rent reduction has been granted for a failure to provide a service which is not listed above and cannot be considered detrimental to the health of the tenant(s), then the MCR increase, into which the rent reduction has been calculated, will be collectible." The Policy Statement further provides that: "DHCR's orders reducing the Maximum Legal Regulated Rent *** currently do not distinguish between a failure to provide an essential service or a non-essential service. In the future, orders will be issued on the above listed definition, to eliminate the discrepancies between them and MBR orders. Rent decrease orders for a failure to maintain services currently in effect for rent controlled apartments, which do not distinguish between a failure to provide an essential or non-essential service, bar the collectability of any subsequent MCR increase, until an order has been issued restoring the rent."
Policy Statement 90-1 does not prohibit the Rent Administrator in a rent restoration proceeding from determining whether the services that the owner asserts were restored are essential or non-essential services. Rather, the Policy Statement provides that where the rent reduction fails to distinguish between essential and non-essential services, the owner cannot collect any subsequent MCR increases "until an order has been issued restoring the rent." In determining the legal maximum rent, the Deputy Commissioner noted that the order issued under docket number CJ120249S, which was in effect at the time the Policy Statement was issued, did not distinguish between essential and non-essential services. Thus, as of the effective date of that order, December 1, 1989, all MCR increases were barred. However, under the subsequent rent restoration order of October 3, 1993, all but $3.00 of the rent was restored, upon a finding that most of the services noted in the rent reduction order had been restored, and that none of the remaining decreases were for essential services. The 1993 order was affirmed in 1996 in an administrative appeal taken by the tenant, petitioner's late husband. The tenant did not seek judicial review of the 1996 affirmance, and petitioner may not collaterally attack the 1993 rent restoration order this proceeding. The court therefore finds that the Deputy Commissioner's interpretation of Policy Statement 90-1 is rational and should be upheld and that it properly calculated the MCR, taking into account the agency's prior orders pertaining to the subject apartment.
Petitioner's claim that she was prejudiced as a result of a delay on the part of the DHCR is without merit. Petitioner has failed to articulate any delays on the part of the DHCR. Petitioner was aware of the owner's claims regarding the MCR since 1997, and could have sought a determination of the proper MCR at that time.
 Finally, although petitioner and the owner chose to submit the issue of the MCR to a rabbinical court, petitioner was not required to do so and the determination of that court is not binding on the DHCR. The Rent and Eviction Regulations provide that "[a]n agreement by [he tenant to waive the benefit of any provision of the Rent Law or these regulations is void" (9 NYCRR 2200.15), and "[i]t shall be unlawful, regardless of any contract ... for any person to demand or receive any rent for any housing accommodations in excess of the applicable maximum rent established therefor by the State Rent Commission or the Division of Housing and Community Renewal" (9 NYCRR 2205.1[a]). Therefore, petitioner was not required to pay [*7]the owner any amounts that exceeded the legal rent or the arrears permitted under the order of March 11, 2003. (See generally, Weis v Lefkowitz, 261 AD2d 480, 481.) In the event that Mrs. Lowe believes that the amount paid to the owner by her father-in-law in accordance with the decision of the rabbinical court exceeded the amount due pursuant to the March 11, 2003 order, she may commence a plenary proceeding to recover these sums. 
In view of the foregoing, petitioner's request to vacate the DHCR's order of March 11, 2003 and for attorney's fees, costs and disbursements is denied in its entirety, and the petition is dismissed.
 Settle judgment.

 
 J.S.C.
Decision Date: May 19, 2004